UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HECTOR LLORENS, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| THE GOLDFIELD CORPORATION, DAVID P. BICKS, HARVEY C. EADS, JR., JOHN P. FAZZINI, DANFORTH E. LEITNER, and STEPHEN L. APPEL, | ) ) ) ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Hector Llorens ("Plaintiff"), by his undersigned attorneys, for this Complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against The Goldfield Corporation ("Goldfield" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Goldfield, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"). Plaintiff's claims arise in connection with the proposed tender offer by FR Utility Services Merger Sub, Inc. ("Acquisition Sub"), a wholly-owned subsidiary of FR Utility Service, Inc. ("FR Utility") (together, "affiliates of First Reserve Fund XIV, L.P") to acquire Goldfield (the "Tender Offer"). Plaintiff also asserts a claim

1

against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2. On November 23, 2020, Goldfield entered into an agreement and plan of merger with FR Utility and Acquisition Sub (the "Merger Agreement"), whereby Acquisition Sub will acquire all outstanding shares of the Company's common stock at a price of $7.00 per share (the "Offer Price").

3. On December 1, 2020, in order to convince Goldfield public common shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.

4. In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the financial projections for Goldfield; (ii) the valuation analyses performed by the Company's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel") in connection with the Tender Offer; and (iii) the *Background of the Merger*.

5. The Tender Offer is scheduled to expire at 11:59 p.m. Eastern Time, on December 29, 2020 (the "Expiration Time"). Therefore, it is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the Expiration Time, so Goldfield shareholders can properly determine whether to tender their shares.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9. Plaintiff seeks to enjoin Defendants from closing on the Tender Offer, or taking any steps to consummate it unless and until the material information discussed below is disclosed to Goldfield's public common stockholders sufficiently in advance of the Expiration Time or, in the event the Tender Offer is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, K&L Gates LLP, Goldfield's counsel regarding the Tender Offer is located in this District at 599 Lexington Avenue, New York, NY 10022.

## PARTIES

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Goldfield common stock.

3

11. Defendant Goldfield is a public company incorporated under the laws of Delaware with principal executive offices located at 1684 W. Hibiscus Blvd., Melbourne, FL 32901. The Company's common stock is traded on the NYSE under the ticker symbol "GV."

12. Defendant David P. Bicks is, and has been at all relevant times, a director of the Company.

13. Defendant Harvey C. Eads, Jr. is, and has been at all relevant times, a director of the Company.

14. Defendant John P. Fazzini is, and has been at all relevant times, a director of the Company.

15. Defendant Danforth E. Leitner is, and has been at all relevant times, a director of the Company.

16. Defendant Stephen L. Appel is, and has been at all relevant times, a director of the Company.

17. The Defendants identified in paragraphs 12 through 16 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Goldfield, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and First Reserve Fund XIV, L.P ("First Reserve")**

18. Goldfield, together with its subsidiaries, provides electrical infrastructure construction services primarily to electric utilities and industrial customers in Southeast and mid-Atlantic regions of the United States and Texas. It also offers electrical contracting services, including the construction of transmission lines, distribution systems, drilled pier foundations, substations, and other electrical services. In addition, the Company is involved in the acquisition, development, management, and disposition of detached single-family homes, townhomes, and condominiums in Brevard County, Florida.

19. First Reserve is a leading global private equity investment firm exclusively focused on energy, including related industrial markets. With over 35 years of industry insight, investment expertise and operational excellence, the firm has cultivated an enduring network of global relationships and raised more than $32 billion of aggregate capital since inception. First Reserve has completed approximately 700 transactions (including platform investments and add-on acquisitions), creating several notable energy companies throughout the firm's history. Its portfolio companies have operated on six continents, spanning the energy spectrum from upstream oil and gas to midstream and downstream, including resources, equipment and services, and associated infrastructure.

20. According to the November 24, 2020, joint press release announcing the Tender Offer:

> **GOLDFIELD ENTERS INTO DEFINITIVE AGREEMENT TO BE ACQUIRED BY FIRST RESERVE FOR $7.00 PER SHARE**
>
> MELBOURNE, FL and STAMFORD, CT - November 24, 2020 --- The Goldfield Corporation ("Goldfield" or the "Company") (NYSE American: GV), a leading provider of electrical transmission and distribution maintenance services for utility and industrial customers, today announced it has entered into a definitive merger agreement under which an affiliate of First Reserve has agreed to acquire all outstanding shares of Goldfield for $7.00 per share in cash, pursuant to a cash tender offer. This represents a 64% premium to Goldfield's closing stock price on November 23, 2020 and a 57% premium to the 30-day volume-weighted average price of $4.46 as of the same date. The transaction, which was unanimously approved by Goldfield's Board of Directors, implies a total enterprise value for Goldfield of approximately $194 million, including net debt, and is not subject to any financing contingency.
>
> Commenting on the agreement, Goldfield's Board of Directors stated, "We fully support this transaction and are excited about the long-term opportunities this presents for the future of Goldfield and the immediate value it provides for our shareholders. First Reserve has a highly successful track record of working with services companies that operate in the utility sector to drive sustainable growth, and we are confident they will be a great partner for our customers and employees as they move forward together."
>
> Jeff Quake, Managing Director at First Reserve, commented, "This investment highlights First Reserve's continued commitment to building leading platforms which play a crucial role in maintaining and enhancing mission-critical infrastructure. As the domestic power generation mix continues to diversify, including the transition to increasingly adopt sustainable sources of electricity such as renewables, we believe Goldfield

5

> is well positioned to participate in these long-term trends driven by increased focus on ESG, reliability and asset integrity."
>
> **Transaction Details**
>
> The transaction will be completed through a cash tender offer for all of the outstanding common shares of Goldfield for $7.00 cash per share, followed by a merger in which the remaining common shares of Goldfield will be converted into the right to receive the same cash price per share paid in the tender offer. Goldfield's Board of Directors will unanimously recommend that all shareholders tender their shares in the offer. The transaction is conditioned upon satisfaction of the minimum tender condition, which requires that shares representing more than 50% of Goldfield's outstanding shares be tendered, as well as other customary closing conditions, including expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. The estate of Goldfield's former CEO John Sottile, which has beneficial ownership and control over approximately 8.5% of the shares outstanding, has agreed to tender those shares into the offer. The transaction is expected to close by January 2021.

(Emphasis in original).

21.     The Offer Price represents inadequate compensation for the Company's shares. Recommendation Statement, 3, 10.

22.     Therefore, it is imperative that Goldfield shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Recommendation Statement, which is necessary for the shareholders to properly exercise their corporate suffrage rights and make an informed decision on whether to tender their shares.

**The Recommendation Statement Omits Material Information**

23.     Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC that is necessary for Goldfield's public common stockholders to make an informed decision concerning whether to tender their shares. The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  Thus, the Recommendation Statement should be amended.

24.     First, the Recommendation Statement fails to disclose complete information

regarding Goldfield's financial projections. Specifically, the Recommendation Statement omits the figures used to calculate the PCA EBITDA for years 2020 through 2024. Recommendation Statement, 24.

25. Unlike poker where a player must conceal his unexposed cards, the object of a recommendation statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

26. Accordingly, Defendants have disclosed the PCA EBITDA projections yet have failed to disclose the figures underlying calculation of those projections, which renders the Recommendation Statement misleading.

27. Second, the Recommendation Statement omits material information regarding Stifel's financial analyses in connection with the Tender Offer.

<u>Valuation of PCA</u>

28. For Stifel's *Selected Comparable Public Company Analysis* for PCA, the Recommendation Statement omits the individual multiples observed for each of the five selected companies. Recommendation Statement, 28-29.

29. With respect to the *Selected Precedent Transactions Analysis* for PCA, the Recommendation Statement omits the individual multiples for the seven precedent transactions selected by Stifel. *Id.* at 30.

30.     In summarizing the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying Stifel's applied range of exit multiples of 5.9x to 6.9x to PCA's estimated 2024 EBITDA; (ii) the inputs and assumptions underlying Stifel's applied range of perpetuity growth percentages of 2.5% to 3.5% to PCA's estimated 2024 unlevered cash flow; (iii) the inputs and assumptions underlying the discount rate of 14.5% (based on PCA's WACC using the Capital Asset Pricing Model); and (iv) the terminal value for the Company. *Id.* at 30-31.

31.     These key inputs are material to Goldfield shareholders, and their omission renders the summary of Stifel's *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.*

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Goldfield's shareholders cannot evaluate for themselves the reliability of Stifel's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of

the Company or were the result of an unreasonable judgment by Stifel, and make an informed decision regarding whether to tender their shares.

### Valuation of Bayswater

32. As for the *Bayswater NPV Analysis*, the Recommendation Statement fails to disclose the inputs and assumptions underlying the selected discount rate of 14.5% (based on Goldfield's Weighted Average Cost of Capital using the Capital Asset Pricing Model). Recommendation Statement, 31.

33. Third, the Recommendation Statement omits certain information concerning the *Background of the Merger*. Specifically, the Recommendation Statement fails to disclose whether Party A, Party C, Party D, Party E, Party F, Party G, and Party H entered into confidentiality agreements with the Company. In the *Background of the Merger*, it states that Goldfield entered into confidentiality agreements with 13 strategic buyers and 15 financial sponsors, and that "all of the confidentiality agreements contained standstill provisions which terminated when the Company entered into the Merger Agreement." *Id.* at 15. However, the Recommendation Statement does not disclose whether those parties included Party A, Party C, Party D, Party E, Party F, Party G, and Party H. The Recommendation Statement goes on to say that Party A, Party C, and Party H submitted unsolicited acquisition proposals and that Parties' D through G were given access to the Company's virtual data room. *Id.* at 14-17. Therefore, it seems likely that the Company entered into a confidentiality agreement with at least one of these parties, so this information must be disclosed to the Company's shareholders as it is crucial in helping them determine whether to tender their shares.

34. In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Expiration Date concerning the Tender Offer, Plaintiff will be unable to make an informed decision concerning whether to tender

his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

# CAUSES OF ACTION

## COUNT I

**(Against All Defendants for Violation of Section 14(e) of the Exchange Act)**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

37. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38. The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer and the intrinsic value of the Company.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts

necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that reasonable stockholders would consider them important in deciding whether to tender their shares.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

41. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

42. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Time.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

45. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

46. SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

47. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

48. The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted information.

49. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which renders the Recommendation Statement false and/or misleading. Defendants knowingly or with deliberate recklessness omitted the material

information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

50. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT III

**(Against all Defendants for Violations of Section 20(a) of the Exchange Act)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Goldfield within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Goldfield, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Tender Offer. They were thus directly involved in preparing this document.

55. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT IV

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Recommendation Statement did not omit any material information or contain any materially misleading statements.

61. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Recommendation Statement to be disseminated to Plaintiff and the Company's other public shareholders.

62. The misrepresentations and omissions in the Recommendation Statement are material, and Plaintiff will be deprived of his right to make an informed decision on whether to tender his shares if such misrepresentations and omissions are not corrected prior to the Expiration Time. Where a shareholder has been denied one of the most critical rights he possesses—the right to make a fully informed decision—the harm suffered is an individual and irreparable harm.

63. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Tender Offer, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.	Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 7, 2020

**MONTEVERDE & ASSOCIATES PC**

By:  */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*